**MONSANTO COMPANY, Appellant,**

v.

**A. A. PRUITT, Appellee.**

**No. 1842.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Sept. 20, 1978.

Frederick J. Bradford, McLeod, Alexander, Powel & Apffel, Galveston, for appellant.

Preston Shirley, John S. McEldowney, Mills, Shirley, McMicken & Eckel, Galveston, for appellee.

CIRE, Justice.

This is a suit on a written indemnity agreement brought by Monsanto, the indemnitee, against A. A. Pruitt, the indemnitor. The trial court denied indemnity to Monsanto.

In 1970 Monsanto was preparing to dismantle Unit 20 of their Texas City plant. A. A. Pruitt, the outside contractor, was to provide pipefitters and boilermakers to perform some of the work under a written contract with Monsanto.

On July 29, 1970, Arnold E. Wingard, a Pruitt employee, was injured when he inhaled cyanide gas at the Monsanto plant. He filed suit against Monsanto for damages for the injuries sustained, and subsequently, after a jury trial, secured judgment against Monsanto. That judgment became final and was paid by Monsanto before this action came to trial.

In the suit by Wingard against Monsanto the jury found that Monsanto was negligent in:

(1) providing a defective safety valve that permitted the seepage of liquid with hydrogen cyanide properties, and

(2) failing to inspect its pipe and safety valves.

The contract between Monsanto and Pruitt provided that:

A. A. Pruitt will continue to carry the broad-form coverage on employees working in the plant. By your agreement to this clause, A. A. Pruitt and your insurance carrier agree that your insurance will pay off first in the event one of your employees is injured while working in our plant regardless of the cause.

\* . \* \* \* \* \*

B. *Hold Harmless Clause*: Notwithstanding any provision of this contract to the contrary, Contractor agrees to save Owner harmless and indemnify it against every claim or claims of any character whatsoever, including, but not limited to, any claim for loss of or damage to property, and for compensation, damage, injury to, or death of, any person whomsoever, in any way growing or arising out of any act or omission by Contractor or any one of its agents, servants, or employees, or arising in any other way in the performance of this contract, even if arising or caused partially or completely by the fault or negligence of Owner.

Monsanto in this suit seeks to recover, under the indemnity provisions of the contract, the amount paid Wingard in the prior suit and the costs of defending the suit.

Pruitt, in his answer to the suit filed by Monsanto, set out the affirmative defenses of estoppel by judgment and res judicata, claiming that the acts or omissions found by the jury in the prior case were in no way acts or omissions of A. A. Pruitt and did not arise any other way in the performance of the contract, and that as a matter of law Monsanto Company was bound in this suit for indemnity by the findings of the jury in the prior suit for damages.

Pruitt, prior to the trial of this cause, sought by motion in limine to prohibit Monsanto Company from mentioning directly or indirectly the fact that A. A. Pruitt was

covered by liability insurance and from reading or otherwise disclosing to the jury particular terms and provisions of the contract. These terms required A. A. Pruitt to carry insurance coverage on their employees and required Pruitt's insurance company to pay off first in the event of injury to one of Pruitt's employees while working in the Monsanto plant. The motion further sought to prohibit Monsanto from inquiry into or offering into evidence any further acts or omissions of any party which may have caused the injuries to Arnold Wingard. The court granted Pruitt's motion, ruling that the acts or omissions as to the cause of the accident as found in the prior suit by Wingard against Monsanto were conclusive, and that the only issue to be tried in the indemnity suit was whether the acts or omissions found by the jury in the earlier case would support indemnity under the contract.

After this motion was granted the parties proceeded to trial without a jury, and except for allowing the introduction of the entire contract between Monsanto and Pruitt, the court, consistent with its ruling on the motion in limine, excluded all evidence having to do with any other cause of the accident except those found by the jury in the prior suit. At the conclusion of the trial the court found that the claim or claims of Mr. Wingard did not arise in any way in the performance of the contract, and judgment was entered that Monsanto take nothing in its indemnity suit against A. A. Pruitt.

█ In its first point of error, appellant complains of the exclusion by the motion in limine of the terms of the insurance agreement covering A. A. Pruitt. The entire contract between Monsanto and Pruitt, however, including the portions concerning insurance, was admitted into evidence; therefore any error of the trial court in its ruling on the motion in limine was harmless.

█ By its second point, appellant asserts error in the trial court's ruling which excluded from evidence any causes of the injuries to Arnold Wingard beyond those found by the jury in the prior case. Monsanto introduced evidence by way of bill of exception that Pruitt's employees, while not responsible for the valve found by the jury to be defective, did remove a valve downstream from the defective valve. The removal of this valve released the hydrogen cyanide in the pipe and allowed it to flow into a ditch where it came in contact with hot water. Cyanide gas was thus produced, and this caused the injuries to Wingard.

Appellee's position is that Wingard's claim was based on a defective valve which was not handled by Pruitt's employees and was not a part of the dismantling work which Pruitt had contracted to carry out; that this was the valve found by the jury in the prior case to be the proximate cause of the accident; and that appellant is precluded in this suit from offering proof of any other cause. We do not agree. The language of the indemnity provision is not that restrictive. The contract provides for indemnity for "every claim . . . in any way growing or arising out of any act or omission by Contractor . . . or arising in any other way in the performance of this contract . . . ." As noted above, but for the removal of the valve by Pruitt's employees, the hydrogen cyanide would have remained confined inside the pipe and would not have mixed with hot water. There would have been no gas, no injury, and no claim. The testimony offered by appellant should have been admitted and should have been considered by the trial court in deciding whether the injuries occurred in connection with the performance of the contract by Pruitt's employees. It is this question, immaterial in the prior suit for damages by Wingard, which determines whether the indemnity provisions in the contract are operative. *Siebrand v. Eyerly Aircraft Co.*, 196 F.Supp. 936 (D.Or. 1961); *Richmond v. Amoco Production Co.*, 390 F.Supp. 673 (E.D.Tex. 1975); *Ref-Chem Corp. v. El Paso Products Co.*, 506 S.W.2d 701 (Tex.Civ.App.—El Paso, 1974, writ ref'd n.r.e.).

While the findings of negligence by the jury in the prior suit were binding on Mon-

santo in the present suit for indemnity, the question in this suit differs from that in the first. The question presented here is whether the injuries arose out of the performance of the Monsanto/Pruitt contract. As the excluded evidence bears directly on this question, this case must be remanded for further consideration by the trial court.

Reversed and remanded.