Xavier BENAVIDES, Appellant,

v.

CUSHMAN, INC., Appellee.

No. 01–04–00982–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 26, 2006.

Gilbert Arrazolo, Arrazolo Law Corporation, Alburquerque, NM, for Appellant.

Philip Robert Brinson, Brown Sims, P.C., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

In his appeal of this product liability case, Xavier Benavides asks that we reverse a judgment on a jury verdict in favor of appellee, Cushman, Inc. Benavides, a golf course groundskeeper, sued Cushman for injuries he sustained when a sand trap rake—a three-wheeled vehicle manufactured by Cushman—overturned while he was driving it. On appeal, Benavides contends the trial court erred in (1) excluding evidence of prior similar incidents, (2) excluding expert testimony regarding failure to warn, (3) admitting cumulative expert testimony, and (4) admitting an incident report written by Benavides's supervisor at the golf course. We conclude that none of the trial court's evidentiary rulings warrant reversal and therefore affirm.

## I. FACTS

Benavides worked at the Battle Ground Golf Course in Deer Park, Texas. In June 2000, Benavides's supervisor instructed him to groom the course's sand traps with Cushman's Groom Master sand trap rake. As Benavides exited a sand trap on the eleventh hole, he noticed a furrow in the sand. Although Benavides was heading downhill, he attempted to reverse course so as to re-enter the trap and smooth the furrow. As he began to turn, the left wheel of the Groom Master kicked upward. Benavides attempted to jump from the machine before it overturned but was unsuccessful. After the impact, he scooted out from underneath the Groom Master and walked to the twelfth hole to seek medical assistance. Benavides subsequently underwent two surgeries for injuries to his neck and lower back.

## II. PROCEDURAL HISTORY

Benavides brought claims against Cushman for design defect, manufacturing defect, and negligence. The case initially proceeded to trial in November 2003. Due to Cushman's violation of a motion in limine, however, the trial court granted Benavides's motion for a new trial. The jury in the second trial found that the Groom Master did not have a design defect, that Cushman was not negligent, and that Benavides was one hundred percent responsible for the accident.[1] This appeal followed.

## III. ANALYSIS

**A. Standard of Review**

■ The admission and exclusion of evidence is committed to the trial court's

---

1. Benavides did not request, and the trial court did not submit, a manufacturing defect question.

sound discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). To obtain reversal of a judgment based on error in the admission or exclusion of evidence, an appellant must show that the trial court's ruling was erroneous and that the error was calculated to cause, and probably did cause, "rendition of an improper judgment." TEX.R.APP. P. 44.1(a)(1); *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex. 1998). In making this determination, we review the entire record. *Alvarado,* 897 S.W.2d at 754. Reversible error does not usually occur in connection with evidentiary rulings unless the appellant can demonstrate that the whole case turns on the particular evidence admitted or excluded. *Id.* at 753–54; *GT & MC, Inc. v. Tex. City Ref., Inc.,* 822 S.W.2d 252, 257 (Tex.App.-Houston [1st Dist.] 1991, writ denied).

**B. Prior Similar Incidents**

■ In his first issue, Benavides contends the trial court abused its discretion in excluding evidence of earlier similar incidents. Specifically, Benavides proffered his expert witness, Dr. Robert Wright, to testify about five rollover accidents involving the Truckster, a different three-wheeled turf vehicle, also manufactured by Cushman. In the first trial, the court granted Cushman's motion in limine prohibiting Benavides from introducing evidence regarding the Truckster rollover accidents. At the second trial, Benavides asked the trial court to revisit its ruling on the motion in limine, but it declined to do so. Benavides made an offer of proof through Dr. Wright, who testified that the prior Truckster incidents were similar because Cushman designed both vehicles for golf courses and the Truckster has a similarly high center of gravity when loaded. The trial court rejected Benavides's offer of proof and refused to allow Dr. Wright to testify about previous Truckster rollover accidents during Benavides's case-in-chief.

During Cushman's case-in-chief, however, Benavides introduced this evidence. While cross-examining Cushman's expert witness, Ralph Barnett, he covered the other incidents extensively. For example:

Q. [Benavides's counsel]: Okay. Let me hand you what we've marked for identification as Plaintiff's Exhibit 241.

A. [Barnett]: Yes.

Q. This is a lawsuit by a gentleman named Jimmy T. Dickerson, correct?

A. Yes.

Q. And in this incident on May 11, 1993, the Plaintiff Dickerson and Hutton were operating a Cushman three-wheeled turf Truckster, correct?

A. Yes.

Q. And they were operating it on a slope at an army post, correct?

A. Yes.

Q. And they were traveling about two miles per hour—

A. Yes.

Q. —along the right of way of—

A. Yes.

Q. —Road, correct?

. . . .

Q. And then the subject vehicle hit a small indentation about the size of a pie plate and approximately one to two inches deep and it caused the truck to overturn, correct?

A. That's what it says under Statement of Facts.

Q. Yes. And then the allegations that were made were that the three-wheel Truckster was unstable and unfit for its intended use, correct?

A. Yes.

Q. And they also claim that it lacked rollover protection systems, correct?

A. Correct.

Q. And the rollover protection systems included the lack of a seat belt, correct?

A. Yes, because if it's a system, it will be also a lack of seat belt [sic].

Q. And that was May 11th, 1993, correct?

A. Yes.

Benavides's counsel read petitions or incident reports discussing each of the other Truckster incidents to the jury and asked Barnett to comment. After this evidence, the trial court admitted as an exhibit a list of the dates of the Truckster rollover accidents and the names of the individuals involved. The exhibit also notes that, in two of the incidents, the involved driver died.

In his brief, Benavides acknowledges that the trial court admitted evidence concerning the prior similar incidents but asserts that he "was denied the ability to effectively prosecute his case by introducing the incidents through his own expert." After the trial court allowed the evidence, however, Benavides did not seek to recall Dr. Wright to discuss the Truckster rollover accidents. Instead, Benavides rested at the conclusion of Cushman's case-in-chief.

Given that the jury heard extensive evidence concerning the other incidents, we hold that Benavides could not be harmed by error, if any, in the trial court's ruling earlier in the trial excluding Dr. Wright's testimony. *See Bryant v. Transcon. Gas Pipe Line Corp.*, 821 S.W.2d 187, 188–89 (Tex.App.-Houston [14th Dist.] 1991, writ denied) (holding that any error in excluding certain admissions was harmless where "[t]he bulk of the excluded evidence was before the jury through [another] exhibit" and other statements admitted into evidence "relate[d] the same information" as was contained in excluded admissions);

*Monsanto Co. v. A.A. Pruitt*, 571 S.W.2d 561, 562–63 (Tex.Civ.App.-Houston [14th Dist.] 1978, no writ) (holding that trial court's ruling on motion in limine excluding portions of contract relating to insurance was harmless where entire contract was later admitted into evidence); *see also Stergiou v. Gen. Metal Fabricating Corp.*, 123 S.W.3d 1, 5 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (where two timelines were essentially identical, holding that any error in excluding appellant's timeline was harmless because appellant did not show how excluded timeline substantially differed from properly admitted one); *Wilson v. John Frantz Co.*, 723 S.W.2d 189, 194 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.) ("If there was any error in excluding the evidence proffered by the appellee, the error was harmless because other evidence that was admitted revealed the [same] facts . . . ."). Moreover, Benavides did not seek to recall Dr. Wright after the trial court's reversal of its previous ruling, and thus cannot support his contention that the trial court denied him the ability to prosecute his case.[2]

C. Failure to Warn

In his second issue, Benavides contends the trial court abused its discretion in refusing to allow testimony by Dr. Wright pertaining to Cushman's failure to warn of the Groom Master's propensity to roll over, if turned on an incline. Benavides made an offer of proof in which Dr. Wright testified that Cushman should have placed a warning on the Groom Master that turning it while on an incline could cause the vehicle to roll over. The trial court excluded Dr. Wright's testimony on the

2. Given our holding that Benavides introduced the testimony proffered by Dr. Wright later during the trial, we do not evaluate whether Dr. Wright's testimony establishes that the prior incidents at issue were "sub- stantially similar" to the accident in this case so as to require the trial court to admit them. *See Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 138–39 (Tex.2004).

ground that Benavides had pleaded a "design defect"—and not a "failure to warn." Benavides asserts that the trial court's "ruling was erroneous because 'failure to warn' is only a subpart of a strict liability claim and is not a cause of action in and of itself." Moreover, Benavides observes, he testified without objection that he had never received a warning about the Groom Master's potential instability if turned while on a slope.

*Marketing Defect Cause of Action*

 In Texas, section 402A of the *Restatement (Second) of Torts* governs strict liability claims. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 426 (Tex.1997). Under section 402A(1), a "defective" product is one that is "unreasonably dangerous to the user or consumer." RESTATEMENT (SECOND) OF TORTS § 402A(1) (1965); *Grinnell,* 951 S.W.2d at 426; *Sims v. Washex Mach. Corp.,* 932 S.W.2d 559, 561 (Tex. App.-Houston [1st Dist.] 1995, no writ). A plaintiff may prove that a product is "defective" if it is (1) unreasonably dangerous as manufactured, (2) unreasonably dangerous as designed, or (3) unreasonably dangerous as marketed because adequate warnings or instructions were not provided. *Grinnell,* 951 S.W.2d at 426; *Sims,* 932 S.W.2d at 561–62.

 A manufacturing defect exists if a product does not conform to the design standards and blueprints of the manufacturer, and the flaw makes the product more dangerous and therefore unfit for its intended or reasonably foreseeable uses. *Sims,* 932 S.W.2d at 562. A product with a design defect complies with all design specifications, but the design configuration is unreasonably dangerous because the risk of harm associated with its intended and reasonably foreseeable use outweighs its utility. *Id.* In contrast, a marketing defect occurs if a defendant knows or should know of a potential risk of harm presented by a product but markets it without adequately warning of the danger or providing instructions for safe use. *Id.*

 A marketing defect claim and a design defect claim "are clearly distinct and separable. A marketing defect is found 'if the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous.' A design defect focuses on a defect in the product itself, and whether safer designs for the product were available." *Smith v. Aqua–Flo, Inc.,* 23 S.W.3d 473, 480 (Tex. App.-Houston [1st Dist.] 2000, pet. denied) (quoting *Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 382 (Tex.1995)); *see also Lemond v. Lone Star Gas Co.,* 897 S.W.2d 378, 386 (Tex.App.-Fort Worth 1994), *aff'd in part and rev'd in part on other grounds,* 897 S.W.2d 755 (Tex.1995) ("In marketing defect cases, the defective or unreasonably dangerous condition of the marketed product arises not from the product itself, but because the seller fails to warn the user of an improper use of the product."). Thus, we reject Benavides's assertion that "failure to warn"—or a marketing defect claim—is "not a cause of action in and of itself."

*Evidence of Failure to Warn*

 "[I]t is not . . . proper to admit evidence unless it is addressed to or bears upon some issue raised by the pleadings." *Erisman v. Thompson,* 140 Tex. 361, 167 S.W.2d 731, 733 (1943). To determine whether a pleading includes a particular claim, we examine the pleading from the perspective of the person against whom the pleading is made. *Wilson v. Bloys,* 169 S.W.3d 364, 369 (Tex.App.-Austin 2005, pet. denied) (citing *Erisman,* 167 S.W.2d at 733). This is because "[t]he purpose of a pleading is to provide the defendant with fair notice of the cause of action and character of evidence that will be raised at trial." *Id.; see also Crain v. San Jacinto Sav. Ass'n,* 781 S.W.2d 638, 639 (Tex.App.-

Houston [14th Dist.] 1989, writ dism'd) (observing that purpose of pleadings "is to put the opposing party on notice of the character of evidence that he will be called upon to meet," and to "place parameters on the forthcoming contest"). In determining whether the plaintiff has pleaded a particular cause of action, "we must be able to determine from the pleadings alone the elements of the cause of action." *Wilson*, 169 S.W.3d at 369 (citing *Fairdale Ltd. v. Sellers*, 651 S.W.2d 725, 725 (Tex. 1982)).

▮▮▮▮▮ Here, Benavides did not plead either a marketing defect or a failure to warn; nor does his petition set forth any of the elements of a marketing defect cause of action. Rather, it states claims for design defect, manufacturing defect, and negligence, and it also seeks punitive damages.[3] Absent a pleading, the parties can nonetheless try a claim by consent, or by trial amendment, but Benavides did not request a trial amendment pertaining to a marketing defect cause of action. In addition, the jury charge did not contain a marketing defect issue—rather, the trial court submitted to the jury issues involving design defect, negligence, and damages only. Benavides neither objected to this charge nor requested that the trial court submit a marketing defect question to the jury. Marketing defect thus was not one of Benavides's theories of recovery in this case—neither by pleading, nor by trial amendment, nor by consent. *See JCW Elecs., Inc. v. Garza*, 176 S.W.3d 618, 625 (Tex.App.-Corpus Christi 2005, no pet. h.) ("[W]here no element of a ground of recovery is submitted or requested, and the entire theory is omitted from the charge, that ground of recovery is waived."); Tex.R. Civ. P. 279. Accordingly, we hold that the trial court did not abuse its discretion in excluding Dr. Wright's testimony, which was directed at proving the elements of a marketing defect cause of action.[4]

---

**3.** With respect to Benavides's strict liability claims against Cushman, the petition in its entirety alleges as follows:

> The GROOM MASTER Sand Rake was defective in design and manufacture and presented an unreasonable risk of injury resulting from such defects, which include, but are not limited to the following:
>
> a. The Groom Master had a dangerously high center of gravity when compared with its narrow track width and short wheel base;
>
> b. The Groom Master's instability caused it to roll over;
>
> c. Exiting a sand trap is a foreseeable event that should not cause loss of stability;
>
> d. The Groom Master's 3 wheel design is defective and unreasonably dangerous;
>
> e. The Groom Master did not have roll over protection or seatbelts, this also made it defective and unreasonably dangerous;
>
> f. The Groom Master does not have a kill switch to turn the machine off in the event of a rollover.

In addition, during pretrial argument on various motions in limine, counsel for Benavides told the trial court, "[H]ere's what our case is about. Our case is about a defective design."

**4.** Dr. Wright would have testified that, because Cushman knew the Groom Master was "not stable in turning maneuvers," the machine "ha[d] to have some sort of warning on it to apprise the operator that even [with] turns as slow as five miles an hour on slopes as little as ten, fifteen degrees, the machine w[ould] go into a lateral upset and a lateral upset c[ould] be extremely dangerous." Dr. Wright also would have testified that his inspection of the Groom Master revealed that the machine did not carry a warning label and "that the failure to warn by the manufacturer was a proximate cause of th[e] accident." These are elements of a marketing defect cause of action. *See Sims v. Washex Mach. Corp.*, 932 S.W.2d 559, 562 (Tex.App.-Houston [1st Dist.] 1995, no writ) (to prevail on a marketing defect claim, the claimant must prove, *inter alia*, that "a risk of harm ... may arise from the intended or reasonably anticipated use of the product," that "the

## D. Cumulative Expert Testimony

■ In his third issue, Benavides contends the trial court erred in allowing cumulative expert testimony by Barnett that had already been given by James Berkeley, Cushman's corporate representative. Benavides called Berkeley as an adverse witness during his case-in-chief. Berkeley testified that, in his opinion, the Groom Master was not defective. During its case-in-chief, Cushman called its outside expert, Barnett, to offer opinions about the safety of the Groom Master. Benavides objected to Barnett's testimony:

Q. [Cushman's counsel]: And have you come to a conclusion or do you have an opinion about the Groom Master and whether it is a stable vehicle or not?

A. [Barnett]: I do have an opinion.

[Benavides's counsel]: Your Honor, before he gets to the opinion, may we approach real quick?

THE COURT: Yes.

(Bench conference not on the record.)

[Benavides's counsel]: Your Honor, we just want to make an objection, just for the record, that we object to Mr. Barnett's testimony to the extent that it is cumulative and duplicative of the testimony that also [has] been given by Mr. Berkeley with regards to the design of rollover protection systems and the need or the lack of need for the rollover protection systems. Just for the record, Your Honor.

THE COURT: The objection's overruled.

Benavides asserts that the trial court should have excluded Barnett's testimony under Texas Rule of Evidence 403 because his opinion on the issue of rollover protection systems "may be understandable from a liability expert but for the fact that Mr. Berkeley had already given an expert opinion on the same issue."

Rule 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by ... needless presentation of cumulative evidence." TEX.R. EVID. 403. We acknowledge that portions of Barnett's testimony are similar to Berkeley's testimony—for instance, both witnesses testified that the efficacy of rollover protection systems depends on the use of seat belts because the protection system itself becomes a hazard if the operator is not wearing a seat belt. Barnett's testimony, however, expounded on Berkeley's observations in several respects. Barnett pointed out that "[t]he problem [with rollover protection systems] is that none of us in technology have been smart enough to figure out how to make people wear seat belts." He then elaborated on the reasons people offer for refusing to wear seat belts. He further explained that the problem is particularly pronounced for vehicles like the Groom Master, because the operator is continually dismounting the machine so he can manually rake the sections of the sand trap the Groom Master missed.[5] In contrast, Berkeley merely acknowledged that the effectiveness of rollover protection systems depends on seat belt use.

■ Moreover, under Rule 403, "[t]he test is not merely whether the evidence to be adduced from the two witnesses is similar, but also whether the excluded testimo-

product supplier actually knew ... the risk of harm," that "the absence of a warning ... render[ed] the product unreasonably dangerous," and that "the failure to warn [was] a causative nexus in the product user's injury").

**5.** Barnett likened the Groom Master to parking meter vehicles and mail trucks—in each scenario, the operator drives twenty feet, jumps off the vehicle to check a parking meter or deliver mail, gets back in the vehicle, drives another twenty feet, and repeats the process. Barnett testified that under such circumstances, the operator is highly unlikely to wear a seat belt.

ny would have added substantial weight to the offering parties' case." *Sims v. Brackett,* 885 S.W.2d 450, 454 (Tex.App.-Corpus Christi 1994, writ denied). Berkeley testified as Cushman's corporate representative, called adversely by Benavides; Barnett, on the other hand, was a professor of engineering at the Illinois Institute of Technology and was not a regular employee of Cushman. As such, Barnett's testimony concerning rollover protection systems added to Cushman's case. We therefore hold that the trial court did not abuse its discretion in permitting Barnett to testify. *See id.* at 453–54 (where appellant offered testimony of two expert witnesses, one of whom was board certified in general surgery only and was appellant's friend, and the other of whom was board certified in internal medicine and did not know appellant, holding that trial court abused its discretion in excluding second expert's testimony as cumulative under Rule 403 because "[t]he difference in the two expert's [sic] credentials and [the second expert]'s lack of a personal relationship with [appellant] in all likelihood would have enhanced [the second expert]'s credibility compared to [the first expert]'s").

### E. Incident Report

In his fourth issue, Benavides contends the trial court abused its discretion in admitting, under the business records exception to the hearsay rule, an incident report written by Benavides's supervisor, Marshall Lee, on the day of the accident. Benavides asserts that the incident report contains expert opinions and should not have been admitted because Cushman did not designate Lee as an expert witness. In the report, Lee describes the accident and notes that "[t]he golf course has a lot of steep hills around the greens where the traps exist. You have to make turns on equipment on level ground."

*Failure to Request Limiting Instruction*

After the trial court admitted the incident report, Benavides did not request that the portions of the report containing the opinions to which he objected be redacted; nor did he request a limiting instruction. Pursuant to Rule 105(a),

> [w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly, but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.

Tex.R. Evid. 105(a).

Here, Benavides objected to three portions of the incident report that allegedly set forth Lee's expert opinions regarding what Benavides did unsafely, why he did it that way, and what unsafe condition existed. Benavides did not object to the report in its entirety, and he did not assert that the report was inadmissible as a business record—rather, he argued that "whether or not this is a business record is immaterial" because the report contains Lee's expert opinions and Lee was not designated as an expert witness.[6]

---

6. On appeal, Benavides contends the incident report was inadmissible as a business record because the report was not attached to an affidavit and no notice was given seeking to have the report admitted as a business record. Texas Rule of Evidence 902(10)(a) provides that "[a]ny record ... which would be admissible under Rule 803(6) [the business records exception to the hearsay rule] ... shall be admissible ... upon the affidavit of the person who would otherwise provide the prerequisites of Rule 803(6) ..., provided further, that such record ... along with such affidavit are filed with the clerk of the court ... at least fourteen days prior to the day upon which trial of said cause commences...." Tex.R. Evid. 902(10)(a). Here, however, no business record affidavit was necessary because Lee laid the proper foundation for ad-

■ Even if Benavides is correct that certain portions of the report were inadmissible, Benavides waived any complaint to general admission of the report by failing to request that the offending portions be redacted and by failing to request a limiting instruction. *See Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 365 (Tex.1987) (noting that party waives any complaint to general admission of evidence if it fails to request limiting instruction); *Horizon/CMS Healthcare Corp. v. Auld*, 985 S.W.2d 216, 225–26 (Tex.App.-Fort Worth 1999), *aff'd in part and rev'd in part on other grounds*, 34 S.W.3d 887 (Tex. 2000) (holding that appellant waived any complaint to general admission of investigation reports by failing to request limiting instruction); *cf. Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 501 (Tex.App.-Fort Worth 2001, pet. denied) (holding that trial court did not abuse its discretion in ruling that allegations of abuse and neglect contained in hospital records were speculative and therefore subject to redaction).

*Failure to Object*

■ Benavides also waived any error in the admission of the incident report by failing to object to the admission of Lee's videotaped deposition, which was played for the jury. During his deposition, Lee authenticated the incident report and discussed the contents of the report in the following exchange:

Q: [Cushman's counsel]: What did you indicate [on the report]?

A: [Lee]: I indicated it was—he did this in an unsafe manner. "Turned machine over on a steep hill" is what he— he said he turned it over. "Operator chose to do it this way"—because it has several steps in here that we had to go by on these reports. And it says: "Why was this done this way?" "Operator chose to do it that way."

Benavides did not seek or receive a ruling from the trial court about the report when Cushman offered Lee's videotaped deposition into evidence; nor did he object at trial to the preceding portion of Lee's testimony describing the contents of the incident report. "[A]ny error in admitting evidence is cured where the same evidence comes in elsewhere without objection." *Schwartz v. Forest Pharms., Inc.*, 127 S.W.3d 118, 124 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). Here, Benavides failed to preserve error by failing to object to Lee's discussion of the contents of the incident report during his videotaped testimony at trial. Accordingly, we hold that the trial court did not abuse its discretion in admitting the incident report.

**IV. CONCLUSION**

We conclude that (1) Benavides could not be harmed by error, if any, in the trial court's ruling excluding evidence of prior similar incidents because the jury heard extensive evidence about them later in the trial; (2) the trial court did not abuse its discretion in excluding Dr. Wright's testimony concerning failure to warn because marketing defect was not one of Benavides's theories of recovery; (3) the trial court did not abuse its discretion in allowing Barnett to testify about rollover protection systems because his testimony was not cumulative, and it added to Cushman's case; and (4) Benavides waived any error in the admission of a workplace incident report by failing to request that it be limited or redacted and by failing to object to the admission of Lee's videotaped deposition, during which Lee described the con-

mission of the incident report as a business record during his testimony. *See* Tex.R. Evid. 803(6) (allowing foundation of business rec-

ords to be established by testimony of qualified witness).

tents of the report. We therefore affirm the judgment of the trial court.