Opinion issued March 27, 2008











     





In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00817-CV




IN THE INTEREST OF B.L.H., a minor child




On Appeal from the 300th District Court
Brazoria County, Texas
Trial Court Cause No. 33547




MEMORANDUM OPINIONAppellant, Marjorie Huepers, appeals from the trial court’s order terminating
her parental rights to her son, B.L.H. Appellee, Amy Middleton, is the managing
conservator of the child under a mediated agreement with Marjorie and has cared for
B.L.H. for most of his life. In four issues, Marjorie contends that the trial court erred
(1) by denying her request to call Amy’s adoptive mother, Sharon Middleton, who is
also Amy’s attorney, as a witness; (2) by denying her motion to disqualify Sharon
from acting as Amy’s attorney at trial; (3) by terminating Marjorie’s rights based on
evidence that is factually insufficient to support the court’s finding that there was a
material and substantial change in her circumstances as required by the Texas Family
Code; and (4) by terminating Marjorie’s rights based on evidence that is factually
insufficient to support the court’s finding that termination was in the best interest of
the child. We conclude that the trial court did not abuse its discretion by denying
Marjorie’s motion to disqualify Sharon and that the exclusion of Sharon’s testimony,
if error, was harmless error. We further conclude that the evidence is factually
sufficient to support the trial court’s judgment. We therefore affirm. Background
          B.L.H. was born in October 2002 with cocaine and Benzodiazaphine (Xanax)
in his system. Marjorie admitted to using drugs during her pregnancy, and B.L.H.
was removed from the care of Marjorie and placed with Marjorie’s mother, Marion
Ward. Ten days later, B.L.H. was placed with Amy because of an incidence of
domestic violence at Marion’s home. In April 2003, Marjorie began substance abuse
treatment at the Franklin House in Beaumont, Texas. B.L.H. was placed with her
there in an attempted reunification. Because of concerns that Marjorie physically and
verbally abused B.L.H., Marjorie was discharged from the Franklin House after only
three days. Two days later, the Texas Department of Protective and Regulatory
Services (“TDPRS”) filed suit seeking to terminate Marjorie’s parental rights, and
B.L.H. was placed in foster care. 
          Marjorie subsequently went to jail on burglary and drug charges. B.L.H. was
moved to the care of Amy in October 2003, and he has remained there since. In
March 2004, while Marjorie was still in jail, the parties mediated the termination case
against Marjorie and agreed that Amy would be named Permanent Managing
Conservator of B.L.H. and Marjorie would be the Permanent Possessory Conservator. 
Amy stated that she would not seek the termination of Marjorie’s parental rights if
Marjorie did not return to prison once she was released on probation.
          Marjorie was released from jail on probation in April 2004. Marjorie stated
that she attempted to contact Amy to notify her of her release from jail, but the letter
was returned. In May 2004, Marjorie violated the terms of her probation and returned
to jail to serve the remainder of her sentence for burglary. Amy brought this suit
seeking to terminate Marjorie’s parental rights in March 2005 while Marjorie was still
in jail. Marjorie was released from jail in April 2005.
 

Denial of Marjorie’s Request to Call Sharon as Witness
          In her first issue, Marjorie contends that the trial court erred by denying her
request to call Amy’s adoptive mother, Sharon, as a witness at trial.


“The admission and exclusion of evidence is committed to the trial court’s
sound discretion.” Benavides v. Cushman, Inc., 189 S.W.3d 875, 878–79 (Tex.
App.—Houston [1st Dist.] 2006, no pet.) (citing City of Brownsville v. Alvarado, 897
S.W.2d 750, 753 (Tex. 1995)). A trial court abuses its discretion when it rules
without regard for any guiding rules or principles. See Alvarado, 897 S.W.2d at 754. 
If a party challenges the exclusion of a witness’s testimony, the party calling the
witness must make a bill of exception of the excluded testimony. Tex. R. App. P.
33.2; Connell v. Connell, 889 S.W.2d 534, 545 (Tex. App.—San Antonio 1994, writ
denied). “To obtain reversal of a judgment based on error in the admission or
exclusion of evidence, an appellant must show that the trial court’s ruling was
erroneous and that the error was calculated to cause, and probably did cause,
‘rendition of an improper judgment.’” Benavides, 189 S.W.3d at 879 (quoting Tex.
R. App. P. 44.1(a)(1) and Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35,
43 (Tex. 1998)). In conducting this harm analysis, we review the entire record. Tex.
Dep’t of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000); Alvarado, 897 S.W.2d at
754; Benavides, 189 S.W.3d at 879. Evidentiary rulings do not usually cause
reversible error unless an appellant can demonstrate that the judgment turns on the
particular evidence that was admitted or excluded. Able, 35 S.W.3d at 617; Alvarado,
897 S.W.2d at 753–54; Benavides, 189 S.W.3d at 879.
          Assuming without deciding that it was error for the trial court to exclude the
testimony of Sharon, Marjorie presents no evidence to suggest that the error was
harmful. In her brief, Marjorie claims that she would have asked Sharon about day-to-day activities in the home with B.L.H. and a domestic violence incident that
occurred between Sharon and her mother-in-law. During her bill of exception,
however, Marjorie asked no such questions. Instead, she asked other questions, most
of which could have easily been answered by other witnesses. For example, Marjorie
asked when Sharon had adopted Amy, how long she had known her prior to the
adoption, and other questions about the adoption. However, Gary Middleton,
Sharon’s husband could have, and did, answer questions about the adoption. Amy
could also have testified to these issues as well. In her bill of exception, Marjorie
questioned Sharon about her membership on a website message board and a message
posted with Sharon’s user name. However, in her brief, Marjorie made no attempt to
address the relevance of such questions or how she was harmed by the exclusion of
this evidence. No other questions asked of Sharon during Marjorie’s bill of exception
present issues that could not have been answered by another witness or were essential
to Marjorie’s case. We conclude the exclusion of the evidence did not, in reasonable
probability, cause the rendition of an improper judgment. See Benavides, 189 S.W.3d
at 879. We hold that the trial court’s error of excluding the testimony of Sharon, if
any, was harmless.
          We overrule Marjorie’s first issue.
Motion to Disqualify Attorney
          In her second issue, Marjorie contends that the trial court erred by denying her
motion to disqualify Amy’s attorney, Sharon, from the case. Amy responds that
Marjorie did not meet her burden of proving that disqualification was required. The
standard of review for the denial of a motion to disqualify an attorney is abuse of
discretion. In re Nitla S.A. de C.V., 92 S.W.3d 419, 422 (Tex. 2002). A trial court
will be found to have abused its discretion only when its actions were arbitrary or
unreasonable. Id. (citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241-42 (Tex. 1985)). 
          Disciplinary Rule 3.08 states in part: 
(a) A lawyer shall not accept or continue employment as an advocate
before a tribunal in a contemplated or pending adjudicatory proceeding
if the lawyer knows or believes that the lawyer is or may be a witness
necessary to establish an essential fact on behalf of the lawyer’s client,
unless:
          (1) the testimony relates to an uncontested issue;
(2) the testimony will relate solely to a matter of formality and
there is no reason to believe that substantial evidence will be
offered in opposition to the testimony;
(3) the testimony relates to the nature and value of legal services
rendered in the case;
(4) the lawyer is a party to the action and is appearing pro se; or
(5) the lawyer has promptly notified opposing counsel that the
lawyer expects to testify in the matter and disqualification of the
lawyer would work substantial hardship on the client. 
(b) A lawyer shall not continue as an advocate in a pending adjudicatory
proceeding if the lawyer believes that the lawyer will be compelled to
furnish testimony that will be substantially adverse to the lawyer’s
client, unless the client consents after full disclosure.
 
Tex. Disciplinary R. Prof’l Conduct 3.08(a), reprinted in Tex. Gov’t Code
Ann., tit. 2, subtit. G app. A (Vernon 1998). Although Rule 3.08 was promulgated
as a disciplinary standard, rather than one of procedural disqualification, courts have
recognized it as providing relevant guidelines for disqualification determinations. In
re Sanders, 153 S.W.3d 54, 56 (Tex. 2004) (citing Anderson Producing Inc. V. Koch
Oil Co., 929 S.W.2d 416, 421 (Tex. 1996)).  
          Attorney disqualification is a severe remedy. Nitla, 92 S.W.3d at 422 (citing
Spears v. Fourth Court of Appeals, 797 S.W.2d 654, 656 (Tex. 1990)). A motion for
disqualification should be considered with caution, because of the great potential that
it could result in immediate and palpable harm, disrupt the proceedings of the trial
court and deprive a party of the right to employ the counsel of choice. Id. (citing
Hoggard v. Snodgrass, 770 S.W.2d 577, 581 (Tex. App.—Dallas 1989, no writ)). 
          It is only appropriate to disqualify an attorney when the attorney’s testimony
is “necessary to establish an essential fact.” Sanders, 153 S.W.3d at 57 (citing Tex.
Disciplinary R. Prof’l Conduct 3.08(a)). The mere fact that a lawyer serves or
may serve as both an advocate and a witness, alone and without more, does not
automatically compel disqualification. Id. (citing Ayres v. Canales, 790 S.W.2d 554,
557–58 (Tex. 1990)). Even if a lawyer violates a disciplinary rule, the party moving
for disqualification still bears the burden of proving actual prejudice will be incurred
as a result of the dual roles of the non-movant’s lawyer as both attorney and witness. 
Id. (citing Ayres, 790 S.W.2d at 558). The “mere allegations of unethical conduct or
evidence showing a remote possibility of a violation of the disciplinary rules will not
suffice” to meet this burden. Id. (citing Spears, 797 S.W.2d at 656). Finally, the rule
must be applied strictly in order to discourage parties from using a motion to
disqualify as a dilatory trial tactic or for other tactical purposes. Nitla, 92 S.W.3d at
422 (citing Spears, 797 S.W.2d at 656).
          Marjorie contends that, due to Sharon’s complex relationship to the facts of the
case—lawyer, mother, grandmother, employer, and spouse to various parties and
witnesses—it would be absurd to think her testimony was anything but essential. 
Although it is undisputed that Sharon could serve as a fact witness due to her
knowledge of relevant facts, Marjorie has not shown that Sharon’s testimony is
“necessary to establish an essential fact.” See Sanders, 153 S.W.3d at 57. The record
here shows various other sources to prove the same information that Sharon could
provide. See id. at 57–58. Amy and Gary Middleton testified as to the condition of
the home they shared with B.L.H. and Sharon, and the nature of the relationship
between the members of the Middleton family and B.L.H. In Sanders, the wife in a
divorce and child custody case sought to disqualify the husband’s attorney, alleging
that he had become a material fact witness and should therefore be disqualified
because the husband had performed some carpentry work on the attorney’s office as
partial payment for his legal counsel. Id. at 56. The court rejected the wife’s
argument because this information could be obtained from sources other than the
husband’s attorney. Id. at 57–58. For example, the court noted that the husband
himself could testify as to these facts, or the attorney’s billing records could be
brought into evidence. Id.
          Marjorie refers to the commentary for Rule 3.08, which states, “A witness is
required to testify on the basis of personal knowledge, while an advocate is expected
to explain and comment on evidence given by others. It may not be clear whether a
statement by an advocate-witness should be taken as proof or as an analysis of the
proof.” Tex. Disciplinary R. Prof’l Conduct 3.08 cmt. 4. Any attorney who has
done research prior to a trial will know what the various witnesses will likely say at
trial. We cannot conclude that the fact finder—here, the trial court judge—could not
have disregarded Sharon’s statements that may have suggested personal knowledge
of facts rather than a comment on evidence in the record. Furthermore, Sharon
asserted that she only intended to testify concerning attorney’s fees, and much of the
“contradictory” testimony cited by Marjorie was on the matter of attorney’s fees. 
Testimony about attorney’s fees, however, is clearly acceptable under Rule 3.08 of
the Texas Disciplinary Rules of Professional Conduct. See Tex. Disciplinary R.
Prof’l Conduct 3.08(a)(3). Marjorie has thus failed to show that Sharon’s
testimony was necessary to establish an essential fact, as the rule requires.
          Marjorie also points to Cossette v. County Style Donuts, Inc., 647 F.2d 526,
530 (5th Cir. 1981). In Cossette, the court asserted, “The rule of disqualification
involves a balancing of the likelihood of public suspicion against the interest in
retaining counsel of one’s choice.” Id. (citing Church of Scientology v. McLean, 615
F.2d 691, 692 (5th Cir. 1980)). Marjorie maintains that the appearance of possible
impropriety created as a result of attorney Sharon’s personal involvement in the case
was so great that it should outweigh Amy’s interest in choosing her counsel. 
However, Cossette refers to the American Bar Association’s Canons of Professional
Ethics, not the Texas disciplinary rules. Furthermore, Cosette discusses the
disqualification of an attorney in a matter involving a former client, not a lawyer
serving as a witness, as in the present case. 
          The last minute filing of the motion to disqualify attorney Sharon suggests it
was a tactical maneuver by Marjorie. See Sanders, 153 S.W.3d at 57–58. Marjorie
waited until the night before trial to enter her motion to disqualify attorney Sharon,
even though Marjorie’s counsel pondered whether or not to raise the motion for
several weeks. Courts have a strong desire to discourage parties from using motions
to disqualify as tactical maneuvers. See id.
          The evidence fails to show that attorney Sharon’s testimony was both necessary
and essential to the case. See Tex. Disciplinary R. Prof’l Conduct 3.08(a). We
hold that the trial court did not abuse its discretion by denying the motion to
disqualify Sharon from acting at Amy’s attorney. 
          We overrule Marjorie’s second issue.
Factual Sufficiency
          In her third and fourth issues, Marjorie asserts that the evidence is factually
insufficient to support the trial court’s finding that there was a material and
substantial change in circumstances and that termination was in the best interest of
the child, as required by the Texas Family Code. Under section 161.004, a court may
not terminate parental rights after previously denying a prior petition to terminate
unless:
(1) the petition under this section is filed after the date the order denying
termination was rendered; 
(2) the circumstances of the child, parent, sole managing conservator,
possessory conservator, or other party affected by the order denying
termination have materially and substantially changed since the date that
the order was rendered; 
(3) the parent committed an act listed under Section 161.001 before the
date the order denying termination was rendered; and 
(4) termination is in the best interest of the child. 
 
Tex. Fam. Code. Ann. § 161.004(a) (Vernon 2006).
          Marjorie challenges the trial court’s finding only on grounds two and four,
concerning the change in circumstances and the best interest of the child. 
          A.      Standard of Review
          A parent’s rights to a child may not be terminated unless the grounds for
termination are proven by clear and convincing evidence. Vasquez v. Tex. Dep’t of
Prot. & Regulatory Servs., 190 S.W.3d 189, 193 (Tex. App.—Houston [1st Dist.]
2005, pet. denied) (citing Santosky v. Kramer, 455 U.S. 745, 747–48, 102 S. Ct. 1388,
1391–92 and In re B.L.D., 113 S.W.3d 340, 353–54 (Tex. 2003)). “Clear and
convincing evidence” is defined as that measure or degree of proof that will produce
in the mind of the trier of fact a firm belief or conviction as to the truth of the claims
sought to be proved. Tex. Fam. Code Ann. § 101.007 (Vernon 2006); In re J.F.C.,
96 S.W.3d 256, 266 (Tex. 2002). When an appellant attacks the factual sufficiency
of an adverse finding on an issue on which the opposing party had the burden of
proof, that appellant must demonstrate that there is insufficient evidence to support
the finding. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983); Vasquez, 190
S.W.3d at 193. In analyzing factual sufficiency, we consider whether the disputed
evidence is such that a reasonable fact finder could not have resolved that disputed
evidence in favor of its finding. In re J.F.C., 96 S.W.3d. at 264; Vasquez, 190
S.W.3d at 193. A factual sufficiency challenge will be overruled if, considering all
the evidence in the record that both supports and contradicts the trial court’s finding,
the fact finder reasonably could form a firm conviction or belief that the termination
of parental rights is in the best interest of the child. In re C.H., 89 S.W.3d 17, 28–29
(Tex. 2002); Vasquez, 190 S.W.3d at 193–94. 
          B.      Material and Substantial Change in Circumstances
          In her third issue Marjorie challenges the factual sufficiency of the court’s
finding that the circumstances had materially and substantially changed as required
by section 161.004 of the Family Code. Specifically, Marjorie contends that she was
not sent to prison on new charges after the petition was filed, that she has stopped
using drugs, that she attempted to set up visits with her son, and that, once she
understood her child support obligations, she caught up with all past due child
support. Amy responds that Marjorie returned to prison after being released because
she violated terms of her probation, that Marjorie continues to abuse drugs, and that
Marjorie had not made efforts to contact the child.
          No definite guidelines exist as to what constitutes a material and substantial
change in circumstances. See Wright v. Wright, 610 S.W.2d 553, 555 (Tex. Civ.
App.—Houston [1st Dist.] 1980, no pet.). However, facts in the record support the
trial court’s determination. 
          At the time the initial agreement with Amy was mediated in March 2004, 
Marjorie was in jail for a conviction for burglary of a habitation. The order denying
termination was signed in early April. Also in April 2004, Marjorie was released
from jail and placed on probation for the crime. Less than a month later, Marjorie’s
probation was revoked because she violated the terms of her probation, and she
returned to jail. In March 2005, while Marjorie was still in jail because of the
probation violation, Amy filed the present suit to terminate Marjorie’s parental rights.
Although Marjorie states that her return to jail was not due to a new offense, the trial
court still could have reached the conclusion that her return to jail, whether on a
probation violation or a new offense, was a material and substantial change in
circumstances. See Thompson v. Tex. Dep’t of Family and Prot. Servs., 176 S.W.3d
121, 126–27 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).
           Furthermore, Marjorie stated that she was no longer abusing illegal drugs.
However, testimony from her aunt suggests that she used illegal drugs after her
release from prison in April 2004. Margaret Foster testified that, at her father’s
funeral, Marjorie arrived emitting an odor of marijuana. Margaret testified Marjorie
admitted to being “all messed up.” Margaret further stated that Marjorie told her she
was under the influence of drugs during a visit to the home of Marjorie’s mother. The
trial court could have chosen to believe the testimony of Margaret over that of
Marjorie. And, based on such evidence, the trial court could have reached the
conclusion that Marjorie abused illegal drugs again after her release from prison and
after the prior petition to terminate was denied, which would also constitute a material
and substantial change in circumstances. See id.
          We overrule Marjorie’s third issue.
          C.      Best Interest of the Child
          In her fourth issue, Marjorie asserts that the evidence is factually insufficient
to support the trial court’s finding that termination of her parental rights is in the best
interest of the child. 
          In determining whether termination is in the child’s best interest, we apply the
Holley factors, as follows: 
          1.       The child’s desires;
 
          2.       The child’s physical and emotional needs, now and in the future;
 
          3.       The emotional and physical danger to the child, now and in the future;
 
          4.       The parental ability of the individuals seeking custody;
 
          5.       The programs available to assist these individuals in promoting the
child’s best interest;
 
          6.       The plans for the child by the individual or agency seeking custody;
 
          7.       The stability of the home or proposed placement;
 
          8.       The parent’s act or omissions that may indicate the existing parent-child
relationship is not the proper one; and
 
          9.       Any excuse for the parent’s acts or omissions.

Vasquez, 190 S.W.3d at 196 (citing Holley v. Adams, 544 S.W.2d 367, 371–72 (Tex.
1976)). The party in favor of termination is not required to prove all of the Holley
factors, particularly where there is undisputed evidence that the parent-child
relationship endangers the child’s safety. See In re C.H., 89 S.W.3d at 27. 
Additionally, absence of evidence about some of the Holley best interest factors does
not preclude a factfinder from reasonably forming a strong conviction that
termination is in the child’s best interest. In re L.M., 104 S.W.3d 642, 647 (Tex.
App.—Houston [1st Dist] 2003, no pet.).
 
                    1.       Desires of Child
          Marjorie contends that there is no evidence that B.L.H. does not want to live
with her. Amy responds that she and B.L.H. are very close and that B.L.H. is also
attached to Amy’s adopted son, Devan, and Amy’s adoptive parents, Sharon and Gary
Middleton. At under five years of age, B.L.H. was too young to testify as to his
desires. This factor weighs neither against nor in favor of termination of Marjorie’s
parental rights. 
                    2.       Child’s Physical and Emotional Needs, Now and in the Future
          Marjorie contends that there is no evidence that she abused or neglected
B.L.H., that he needs to live with his full-blooded brother in order to develop their
family bond, and that she understands B.L.H.’s emotional and physical needs, now
and in the future. Amy responds that B.L.H. was born with cocaine and Xanax in his
system and that Marjorie has never provided him with food, clothing, or shelter. 
Concerning the child’s present physical and emotional needs, Marjorie testified that
she understood B.L.H.’s physical needs now to be “food, clothing, time to play, time
to sleep, baths, everyday living.” She also testified that she understood his current
emotional needs to be “love, the feeling of belonging, the feeling that someone is
there, I mean that he’s going to be taken care of.” Although Marjorie demonstrated
an awareness of what B.L.H.’s present physical and emotional needs may be, other
than for three days, she has never physically or emotionally been the caretaker of
B.L.H. Until very shortly before trial, Marjorie paid no child support for the care of
B.L.H., with the possible exception of about $20 early in B.L.H.’s life. The record
is undisputed that Amy is the only mother that B.L.H. has ever known. B.L.H. has
lived with Amy since he was 13 days old with only a six-month separation while he
was in foster care. B.L.H. refers to Amy as “mommy.” Marjorie’s testimony
acknowledges that she has no bond with B.L.H. Marjorie’s contact through
supervised visitation with B.L.H. has been limited and sporadic, and the last time she
visited him was on July 21, 2003, when B.L.H. was still an infant. Although Marjorie
appears to understand what B.L.H.’s physical and emotional needs may be, no
evidence shows that she has provided for any of those needs for most of his life.
          Concerning the child’s future physical and emotional needs, Marjorie testified
that in the future, B.L.H. would need “support” and “help dealing with the fact that
he’s going to have . . . abandonment issues.” She testified that she would support
herself, B.L.H., and her other infant son on $560 a month that she would earn through
work and friends “that are willing to help me.” Marjorie testified that she was going
to be “put on a schedule” and go “through training” to be a hostess at Waffle House. 
However, Marjorie did not provide any documentation to support her claim that she
had been hired to work there, and the trial court could have disregarded her testimony
as not credible. Cf. Vasquez, 190 S.W.3d at 197 (noting that Vasquez was able to
provide a paycheck stub from her employment). Marjorie did testify that she had
worked a temporary job as a telemarketer for the Public Safety Services. However,
she only worked 15 days and made $166. Furthermore, Marjorie testified that she had
not had a steady job since she was released from jail and could not estimate how
much she earned on a month to month basis from her work as a babysitter. The
record shows, therefore, that Marjorie’s employment was sporadic, making her
financially reliant on others.
          When asked how much money she would need if B.L.H. needed to go to the
hospital or get his prescriptions filled, Marjorie stated that she “[had] no idea.” The
record reveals that B.L.H. must wear glasses and have his vision monitored. B.L.H.
sometimes has “rages” during which we will “throw himself on the ground, bang his
head on the ground, bang his head on walls . . . [and] bite himself.” Marjorie testified
that she would be able to help B.L.H. with his rages through the help of a therapist
who would talk with Marjorie and B.L.H., and she would pay for the therapist
through Medicaid. Additionally, Marjorie testified that she had “looked into the
CHIPs program” for B.L.H.’s medical needs. However, Marjorie testified that she did
not know what steps to take to get B.L.H. enrolled in the program and that she had
not read the qualifications or filed an application for the program. Given the lack of
consistent employment and the heavy reliance on “friends,” the evidence shows that
Marjorie will have difficulty providing for B.L.H.’s physical and emotional needs in
the future. This factor weighs in favor of termination of Marjorie’s parental rights.
                    3.       Emotional and Physical Danger to Child, Now and in the
Future

          Marjorie contends that she has been drug-free for over three years, has
completed all her drug rehabilitation programs, and that there is no evidence of any
possible physical or emotional abuse of the child by her now or in the future. By
contrast, Amy responds that Marjorie poses a threat to the child because of her past
use of illegal narcotics and potential for relapse. The record shows that Marjorie has
placed B.L.H. in physical and emotional danger by her use of illegal narcotics for
most of B.L.H.’s life, including while she was pregnant with B.L.H., which caused
him to be born with cocaine and Xanax in his blood. See Vasquez, 190 S.W.3d at 197
(“Evidence of pre-natal and post-natal drug abuse by a parent may be ground for
termination.”) (citing In re R.D., 955 S.W.2d 364, 368 (Tex. App.—San Antonio
1997, pet. denied). Furthermore, Marjorie testified that she used marijuana every day
for nine years before she quit using drugs. 
          Marjorie contended at trial that due to her treatment for substance abuse, she
was now drug-free. Marjorie testified that she had been clean since April 4, 2005. 
However, the record contains evidence to contradict Marjorie’s claim that she was no
longer using narcotics. Marjorie’s aunt testified that she observed Marjorie under the
influence of marijuana during the time when Marjorie claimed that she was clean. 
The trial court could have disbelieved Marjorie’s claim that she was no longer using
illegal drugs because, despite her recent treatment, a witness testified that Marjorie
was still using illegal drugs. Additionally, the record shows that Marjorie has been
incarcerated for most of B.L.H.’s life and thus left physical care of him up to others. 
The record supports the determination that Marjorie now poses, and will pose in the
future, an emotional and physical danger to B.L.H. This factor weighs in favor of
termination of Marjorie’s parental rights.
                    4.       Parental Ability of Individuals Seeking Custody
          Marjorie contends that she can provide B.L.H. with a safe and stable home, that
she has no intention to cut off ties with Amy and Amy’s family, and that she now has
parenting abilities—“nurturing, love, understanding, caring, the willingness to be a
parent”—that she did not have when B.L.H. was born. Amy responds that Marjorie
does not have a home, does not have a job, has no bond with B.L.H., and has not
attempted to create a bond with B.L.H. Marjorie has gone at least six months without
providing for B.L.H. financially and without visitation. See In re B.M.R., 84 S.W.3d
814, 820 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (taking into account father’s
long periods without visiting and without providing for children financially). 
Although Marjorie paid all of her child support after being in arrears, she only paid
it after being held in contempt of court, and she has not paid again since May 2006. 
During a brief time when B.L.H. was placed with Marjorie at her drug rehabilitation
facility, he was removed from her care by TDPRS because of allegations of abuse by
Marjorie. Although Marjorie purports to love B.L.H., her conduct throughout his life,
with few exceptions, demonstrates that she does not have the parental ability to care
for B.L.H. This factor weighs in favor of termination of Marjorie’s parental rights.
                    5.       Programs Available to Assist Individuals in Promoting
Child’s Best Interest

          Marjorie contends that she has used various programs in the past to assist her
in caring for her children, which include Medicaid and The Ripley House;
furthermore, she contends that she could use CHIP for B.L.H.’s medical needs. Amy
agrees that Marjorie receives government benefits for her other child. Marjorie
testified that she took a class on parenting and that she learned certain safety
measures at those classes. Marjorie testified that she planned to have B.L.H.’s
healthcare taken care of by CHIP, but she also testified that she had no idea how
much it would cost if B.L.H. had to go to the hospital or have prescriptions filled. 
          Additionally, although there are several programs available to aid Marjorie in
caring for B.L.H., she has not filed an application for B.L.H.’s healthcare to be
provided by CHIP. Thus, this factor weighs neither for nor against termination.
                    6.       Plans for Child by Individuals Seeking Custody
          Marjorie contends that she has a safe and stable home that she rents from
B.L.H.’s paternal grandmother, who only lives three houses away; furthermore,
Marjorie also asserts that she has made arrangements with a therapist at the Ripley
House to help her and B.L.H. through the transition. Amy responds that Marjorie
does not have a safe and stable home.
          Marjorie testified that she planned to depend on the financial help of family
and friends to support her and her two children. Marjorie planned to leave B.L.H.
with his paternal grandmother when Marjorie went to work. Marjorie also testified
that she was living at her mother-in-law’s house but was not paying any rent. 
Marjorie also testified that she did not have a car and that she would have to “depend
on everybody to drive [her] to work.” Although Marjorie has made efforts to make
some plans for B.L.H., those plans rely heavily upon others because Marjorie does
not pay rent, has no car, and relies on the financial assistance of her family, friends,
and government. Marjorie’s plans fail to acknowledge her continued drug use and
transient living arrangements. In contrast, Amy has demonstrated an ability to care
for B.L.H. throughout his life. This factor weighs in favor of termination of
Marjorie’s parental rights.
                    7.       Stability of Home or Proposed Placement
          Neither Marjorie nor Amy briefed this issue. However, evidence showed that
Marjorie was residing in a house that was boarded up in the front. Additionally,
Marjorie did not pay rent to stay at the house and lived in three different locations
during the trial court proceedings. Evidence of the transient living by Marjorie
suggests that placement of B.L.H. with her would provide an unstable home. This
factor weighs in favor of termination of Marjorie’s parental rights.
                    8.      Acts or Omissions of Parent that May Indicate that Existing
Parent-Child Relationship is not a Proper One.
 
          Marjorie contends that, although she does have a criminal history and a past
drug problem, she has now overcome those problems and is able to provide a safe and
stable home for B.L.H. Amy contends that Marjorie’s past drug use and criminal
history still pose present and future problems for her. The record demonstrates that
the acts by Marjorie show an inadequate relationship with B.L.H. due to Marjorie’s
commission of crimes and violations that resulted in her repeated incarcerations,
continued drug use even after receiving treatment, failure to pay child support 
consistently, and failure to interact consistently with B.L.H. to form a relationship
with him. This factor weighs in favor of termination of Marjorie’s parental rights. 9.Any Excuses for Acts of Omissions of Parent
            Neither Marjorie nor Amy discusses any excuses for those acts or omissions. 
Thus, this factor weighs neither for nor against termination. We therefore conclude
that the application of the Holley factors supports the trial court’s finding that
termination of Marjorie’s parental rights is in the best interest of B.L.H. 
          We overrule Marjorie’s fourth issue.
Conclusion
          We affirm the judgment of the trial court.



                                                             Elsa Alcala
                                                             Justice

Panel consists of Justices Taft, Keyes, and Alcala.