Opinion issued June 30, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00150-CV

———————————

Old Republic Insurance Company, Appellant

V.

Marlana
Edwards, Appellee



 



 

On Appeal from the County Court at Law No. 3 

Harris County, Texas



Trial Court Case No. 896330

 



 

MEMORANDUM OPINION

This is an
appeal from a take-nothing judgment following a bench trial.  We affirm. 

BACKGROUND

On June 18, 2007, Plaintiff Old Republic Insurance Company
sued Defendant Marlana Edwards for breach of contract, alleging that she failed
to make payments on an installment contract for home improvements she entered
with Nationwide Building Systems, a non-party (“the Agreement”).  Old Republic’s Petition states that it is
“the owner and holder of this note and is entitled to receive all money due
under its terms.”  It sought $15,310.08
in principal, $3,015.35 in interest, and at least $5,497.63 in attorney’s
fees.  

Edwards filed an answer and a verified denial.  She asserted numerous affirmative defenses,
including failure of consideration, fraud, and failure of conditions
precedent.  Pursuant to Rule 93 of the
Texas Rules of Civil Procedure, she also verified the following denials: “a.
Defendant did not enter the alleged agreement with the alleged Plaintiff—the signature on the attached
contract is not the defendant’s; b. the agreement is not as alleged; c.
Plaintiff does not have legal capacity to sue; [and] d. The assignment is not
as alleged.” 

A.  
The Agreement and its Assignments

The May 15, 2005 Agreement attached to Old Republic’s
petition reflects it is for the installation of solar screens, a storm door,
and paint.  Its terms provide for 144
payments of $225.59 (principal amount of $15,365.00 and 14.49% interest),
monthly “beginning approximately 30 days from the completion date.”  The Agreement is signed by “Catherine
Murray,” (elsewhere identified as “President” of Nationwide) as the Seller and
“Marlana Edwards” as the Buyer.    

The Agreement has an assignment section, dated the same
date as the Agreement, stating: “This Contract is assigned to Assignee . . .
First Mutual Bank.”    Another page of
the Agreement has a section entitled “Assignment by Seller” containing the
terms of the assignment to First Mutual. 
There, Nationwide makes several warranties to First Mutual Bank,
including that the statements in the Contract “are true and correct,” that the
“Contract is valid and enforceable in accordance with its terms,” that the
“names and signatures on this Contract are not forged, fictitious or assumed,
and are true and correct,” and that the goods covered “have been delivered to
the Buyer in good condition and have been accepted by Buyer.”  The assignment provision expressly
transferred to First Mutual “its rights, title and interest in this Contract”
and gives it “full power, either in its own name or in Seller’s name, to take
all legal or other actions which Seller could have taken under the Contract.” 

Attached to Old Republic’s petition is also a March 1,
2006 “Assignment of Texas Home Improvement Retail Installment Contract”
assigning from First Mutual “[a]ll right, title and interest . . . to Old
Republic Insurance Company without warranty, except that the note is valid and
enforceable against the borrower.”  An
employee of Old Republic Insured Credit Services—an entity related to the plaintiff
Old Republic—testified
at trial that this assignment resulted from an insurance claim by First
Mutual.  Old Republic insures loans held
by financial institutions, such as Edwards’s debt to First Mutual.  When First Mutual notified Old Republic that
Edwards had defaulted on her loan, Old Republic paid First Mutual’s claim, took
assignment of the Agreement, and sued Edwards.

B.  
Trial Court Proceedings  

Old Republic moved for both a traditional summary
judgment on its breach-of-contract claim, and no-evidence summary judgment on
Edwards’s affirmative defenses.  Edwards
responded with evidence in the form of an affidavit stating that it “is not my
signature on the contract attached to the petition” and that she does “not
recall a contractual agreement” or “receiving anything of value from OLD
REPUBLIC INSURANCE COMPANY and/or their alleged assignors.”  The record does not contain a ruling on those
motions.  

1.    
The Business Record Affidavit

On September 8, 2008, Old Republic filed a “Notice of
Filing of Business Records Affidavit.” 
This was filed, however, in a different case because, although it was
styled correctly, it was titled with the wrong cause number.  Attached was a “Business Records Affidavit”
of an Old Republic employee:

  I am the
custodian of the records of Old Republic Insurance Company.  Old Republic Insurance Company is the owner
and holder of the account of Marlana Edwards by assignment from the original
creditor.  Attached hereto are
twenty-three (23) pages of records kept on this account by Old Republic
Insurance Company in the regular course of business, and it was the regular
course of business of Old Republic Insurance Company for an employee or
representative of Old Republic Insurance Company, with knowledge of the act,
event, condition, opinion, or diagnosis, recorded to make the record or to
transmit information thereof to be included in such record; and the record was
made at or near the time or reasonably soon thereafter.  The twenty-three (23) pages of records
attached hereto are the original or exact duplicates of the original.

 

Attached to this affidavit were several documents, including a copy of
the Agreement that is the subject of this suit. 
Old Republic did not dispute at trial that Edwards’s counsel was never
provided copies of many of the attached records during discovery.    

2.    
The trial

On October 15, 2009, the case was tried to the
bench.  The defendant was not present at
trial.  In making an opening statement,
Old Republic’s counsel explained that it intended to prove its case with the
business records affidavit and the attached documents.  Edwards’s counsel pointed out that the
defendant disputed that the work was done, that she signed the contract, that she
owned the house, and he argued that Old Republic could not make its case as
there was no one at trial to testify as to these matters or to authenticate the
records Old Republic sought to rely upon.   


The court then asked whether Old Republic had subpoenaed
Edwards, and Old Republic’s counsel represented that it had.  The lawyers’ versions of what happened in
that regard, however, were conflicting. 
Edwards’s counsel stated that, while he was out of town the Friday
afternoon before trial, someone from his office called to tell him that there
were persons “here looking for you but we told them  you weren’t here.  They said well, that’s okay.  We can just throw it on the floor.  And it was thrown on the floor.’  To my knowledge there was no check submitted
or — so
they tried to subpoena her through me.”[1]  Old Republic’s counsel responded “I don’t
know —
there was a check submitted.  It was
signed.  I don’t have the actual
signature because I had to come back to — or fly down here to Houston before I
could get the signature.  I can look at
my records and tell you who signed for it at Mr. Walker’s office.  But as far as the signed affidavit from the
process server, I do not have that.”  In
light of this, the court concluded that Old Republic “can’t prove that she was
subpoenaed,” taking that issue “off the table.”

The only witness to provide testimony at trial was
Chad Unel, the assistant vice president for loss mitigation and field
underwriting for Old Republic Insured Credit Service.   He testified that Old Republic is a property
and casualty company that insures loans originated by financial
institutions.  In this case, Old Republic
provided insurance to First Mutual, paid First Mutual’s claim when Edwards
defaulted, and took assignment of Edwards’s note.  When shown a copy of the Agreement, he
identified it as a retail installment contract “received after claim was made
by First Mutual Bank.” 

Following objection and discussion about Unel not
actually working for Old Republic but rather a related company, Old Republic’s
attorney asked that the court take judicial notice of its business records
affidavit rather than require it to prove up documents.  Edwards’s counsel objected on several
grounds, arguing that the contract and documents attached to the affidavit were
not business records under the hearsay exception Rule 803(6) of the Texas Rules
of Evidence, so the business record self-authentication Rule 902(10) allowing
certain documents to be both proven up and authenticated by a business records
affidavit does not apply.    Edwards’s
counsel also protested that the Old Republic affidavit was not executed by
anyone purporting to have personal knowledge of how First Mutual’s records were
kept.  

At that point, the court offered Old Republic the
opportunity to put on any evidence it had to authenticate and prove up as
business records the documents it sought to introduce.  Unel then testified that Marlana Edwards’s
signature was on the Agreement, and further testified that Old Republic “took
ownership of these records when First Mutual Bank provided us their old
originals.”  He averred that Old Republic
has been in possession of the records since the assignment from First Mutual,
and that it is the “nature of [its] business, to keep records in [its] file
from the moment of assignment on.”    

When asked about a credit application Old Republic
next sought to introduce, Unel testified that it was also “part of the records
that [it] received from First Mutual Bank” and that it was “kept in the normal
course of business by Old Republic Insurance Company following an
assignment.”  Following this testimony,
the court sustained the defendant’s objection to introduction of both exhibits—the Agreement and the credit
application—and
the trial concluded. 

3.    
The Court’s Judgment and Old
Republic’s Motion for New Trial 

After the court rendered judgment that Old Republic
take nothing on its claim, Old Republic filed its first motion for new trial,
attaching a return of subpoena reflecting that a subpoena for Edwards was
signed for by someone in the defendant’s counsel’s office.  Old Republic thus argued that Edwards’s
attorney had at least constructive notice of the subpoena.     Because Old Republic was harmed by the inability
to illicit testimony from Edwards, it argued, the trial court should grant a
new trial “under the principles of fairness.” 
Old Republic also complained in its motion for new trial again that the
court “erred by refusing to allow Old Republic to testify about Defendant’s
records held by Old Republic because the records are kept in the regular course
of business, contain original documents, and Old Republic filed a proper
business record affidavit.”  Old Republic
subsequently filed Plaintiff’s First Supplemental Motion for New Trial to bring
to the court attention a new case decided by this Court on December 10,
2009.  See Simien v. Unifund CCR Partners, No. 01-08-00593-CV (Tex.
App.—Houston [1st Dist.] December 10, 2009) (withdrawn on rehearing).[2]
 Old Republic’s motion for new trial was
not expressly ruled upon, rendering it overruled by operation of law.        

4.    
This Appeal 

Old Republic brings four issues on appeal, arguing
that the trial court 
(1) “erred by refusing to admit the primary business records of Old Republic
pursuant to the business records exception to the hearsay rule,” (2) “erred in
denying Old Republic’s motion for summary judgment when Old Republic
established its right to judgment as a matter of law,” (3) “erred in finding
that the subpoena directed to Edwards through her attorney of record was
insufficient when Edwards had notice of the subpoena,” and (4) “erred by
denying Old Republic’s motion for new trial.” 
Edwards did not file an appellee’s brief in response.  We affirm the trial court’s judgment. 

EXCLUSION OF EVIDENCE

In its first issue, Old Republic asserts that the
trial court erred by refusing to admit its business records under Texas Rules
of Evidence 803(6) and 902(10).  It
argues that it filed its business records affidavit “more than one year before
the trial,” and “[e]ven with ample time to review the business records, Edwards
never objected to the records prior to trial and waived her right to object to
the admission of the records.”  Old
Republic reasons that Rule 902(10)’s requirement that business records be filed
fourteen days prior to trial, “impl[ies] that the non-filing party has a duty
to object to the affidavit prior to the commencement of trial or else the
objection is waived.”  “Without such an
implication,” it contends, “the filing party could never know whether the
custodian of records would need to appear live at trial.”      

Old Republic next argues that it established—both with its business records affidavit
and through Unel’s testimony—the admissibility of its records as an
assignee of First Mutual by showing: (1) the documents are incorporated and
kept in the regular course of the testifying witness’s business, (2) that the
business typically relies upon the accuracy of the contents of the documents,
and (3) the circumstances otherwise indicate the trustworthiness of the documents.  See
Simien, 321 S.W.3d at 240-41.    

A.  
Standard of Review

Evidentiary rulings are committed to the trial court’s sound
discretion.  Bay Area Healthcare Grp., Ltd. v. McShane, 239 S.W.3d 231, 234
(Tex. 2007).  We review a trial court’s
decision to admit or exclude evidence for an abuse of that discretion.  In re
J.P.B., 180 S.W.3d 570, 575 (Tex. 2005).  A trial court abuses its discretion when it
acts without reference to any guiding rules and principles. Garcia v. Martinez, 988 S.W.2d 219, 222
(Tex. 1999).  We must uphold the trial
court’s evidentiary ruling if there is any legitimate basis for the ruling.  Owens–Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998); Oyster Creek Fin. Corp. v. Richwood Invs.
II, Inc., 176 S.W.3d 307, 317 (Tex. App.—Houston [1st Dist.] 2004, pet.
denied).

“To obtain reversal of a judgment based on error in the admission
or exclusion of evidence, an appellant must show that the trial court’s ruling
was erroneous and that the error was calculated to cause, and probably did
cause, ‘rendition of an improper judgment.’”  Benavides
v. Cushman, Inc., 189 S.W.3d 875, 879 (Tex. App.—Houston [1st Dist.] 2006,
no pet.) (quoting Tex. R. App. P.
44.1(a)(1); Malone, 972 S.W.2d at
43).  In conducting this harm analysis,
we review the entire record. Tex. Dep’t
of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000); Benavides, 189 S.W.3d at 879.

Evidentiary rulings do not usually cause reversible error
unless an appellant can demonstrate that the judgment turns on the particular
evidence that was admitted or excluded.  City of Brownsville v. Alvarado, 897
S.W.2d 750, 753–54 (Tex. 1995);  Benavides, 189 S.W.3d at 879.  An error in the exclusion of evidence requires
reversal if it is both controlling on a material issue and not cumulative. Mentis v. Barnard, 870 S.W.2d 14, 16
(Tex. 1994).

B.  
Business Records

“‘Hearsay’ is a statement, other than one made by the
declarant while testifying at the trial or hearing, offered in evidence to
prove the truth of the matter asserted.” Tex.
R. Evid. 801(d).  The proponent of
hearsay has the burden of showing that the testimony fits within an exception to
the general rule prohibiting the admission of hearsay evidence. Volkswagen of Am., Inc. v. Ramirez, 159
S.W.3d 897, 908 n.5 (Tex. 2004).

Rule 803(6) of the Texas Rules of Evidence provides the
following exception to the hearsay rule for business records:

A . . . record . . . made at or near the time by, or
from information transmitted by, a person with knowledge, if kept in the course
of a regularly conducted business activity, and if it was the regular practice
of that business activity to make the memorandum, report, record, or data
compilation, all as shown by the testimony of the custodian or other qualified
witness, or by affidavit that complies with Rule 902(10), unless the source of
information or the method or circumstances of preparation indicate lack of
trustworthiness.

 

Tex. R. Evid. 803(6); see In re
E.A.K., 192 S.W.3d 133, 141 (Tex.App.—Houston [14th Dist.] 2006, pet.
denied).  The business records “shall be
admissible in evidence in any court in this state upon the affidavit of the
person who would otherwise provide the prerequisites of Rule 803(6) or (7).” Tex. R. Evid. 902(10)(a).

Rule 902(10) provides a form for the
affidavit and states it “shall be sufficient if it follows this form though
this form shall not be exclusive, and an affidavit which substantially complies
with the provisions of this rule shall suffice.” Tex. R. Evid. 902(10)(b).  The form language provided is as follows:

My name is ______, I am of sound mind, capable of making this
affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of ______. Attached hereto are ______
pages of records from ______. These said ______ pages of records are kept by
______ in the regular course of business, and it was the regular course of
business of ______ for an employee or representative of ______, with knowledge
of the act, event, condition, opinion, or diagnosis, recorded to make the
record or to transmit information thereof to be included in such record; and
the record was made at or near the time or reasonably soon thereafter. The
records attached hereto are the original or exact duplicates of the original.

Id.

C.  
Admissibility of Business Records of
a Third-Party

“A document authored or created by a
third party may be admissible as business records of a different business if:
(a) the document is incorporated and kept in the course of the testifying
witness’s business; (b) that business typically relies upon the accuracy of the
contents of the document; and (c) the circumstances otherwise indicate the
trustworthiness of the document.”  Simien, 321 S.W.3d at 240–41 (citing Bell v. State, 176 S.W.3d 90, 92 (Tex. App.—Houston [1st Dist.]
2004, no pet.)).    

D.   Analysis

Old
Republic primarily relies upon its business record affidavit to argue that it
satisfied its burden to authenticate the contract and application it sought to
use at trial.  Old Republic’s argument
assumes that the Agreement and credit application are hearsay but admissible as
business records, and no appellee’s brief was filed arguing otherwise.  Thus, for purposes of our business records
analysis, we assume, without deciding, that these documents constitute hearsay,
a point that Edwards’s attorney strongly disputed at trial.     

Old
Republic contends that “the trial court has no discretion to deny the
admittance of business records if the requirements of Texas Rules of Evidence
803(6) and 902(10) are met.”  It asserts
it “filed a business record affidavit that complied with Texas Rule of Evidence
902(10).”  Then, citing no authority in
support, Old Republic insists that because Edwards did not object to that
affidavit or the attached records before trial, Edwards waived any objection
and the trial court was without discretion to refuse to admit the documents. 

Old
Republic’s argument relies on the faulty premise that it complied with Rule
902(10).  Rule 902(10) requires that the
business records affidavit and attached records be “filed with the clerk of the
court for inclusion with the papers in
the cause in which the record or records are sought to be used as evidence
at least fourteen days prior to the day upon which trial of said cause
commences.”  Tex. R. Evid. 902(10) (emphasis added).  Here, Old Republic filed the business record
affidavit in the incorrect case, and the affidavit and attached documents were
not made a part of the record in the underlying case until after the final judgment was signed.  Given this fact, and given that Old Republic
did not dispute Edwards’s counsel’s representation to the court that Edwards
had not otherwise been provided several of the attached documents in discovery,
we cannot conclude that the trial court abused its discretion by refusing to
allow Old Republic to introduce the business records affidavit and attached
records.  

We thus
turn to whether Old Republic has demonstrated that the trial court abused its discretion
by holding that the Unel’s testimony at trial was insufficient to prove up the
evidence the trial court excluded.  A
“custodian or other qualified witness,” Tex.
R. Evid. 803, may overcome a hearsay objection with testimony satisfying
certain criteria: (1) the records were made and kept in the course of a
regularly conducted business activity; (2) it was the regular practice of the
business activity to make the records; (3) the records were made at or near the
time of the event that they record; and (4) the records were made by a person
with knowledge who was acting in the regular course of business.  In re
E.A.K., 192 S.W.3d at 141.  A
document may be authenticated by “evidence sufficient to support a finding that
the matter in question is what its proponent claims,” including “[t]estimony by
a witness with knowledge . . . that a matter is what it is claimed to be.” Tex. R. Evid. 901(a), (b)(1).     

Texas
courts uniformly recognize that business records of an original creditor can
become the business records of a predecessor company, but disagree about what evidence
is required to prove up those business records. 
For example, the El Paso Court of Appeals—in a case relied upon by Edwards’s attorney during trial to argue that
Old Republic’s witness Unel did not have sufficient knowledge of First Mutual’s
practices—requires a sponsoring
witness have personal knowledge of the way records were created and kept by the
original creditor to be admissible:    

Although Rule 803(6) does not require the predicate
witness to be the record’s creator or have personal knowledge of the content of
the record; however, the witness must have personal knowledge of the manner in
which the records were prepared. 
Documents received from another entity are not admissible under Rule
803(6) if the witness is not qualified to testify about the entity’s record
keeping.  

 

Riddle v. Unifund Partners, 298 S.W.3d 780, 783 (Tex. App.—El
Paso 2009, no pet.) (citations omitted). 


Subsequent
to the trial in the underlying case here, this Court considered a similar issue
in the context of the assignment of a credit card account, applying a different
analysis and expressly declining to follow the approaches of El Paso and Dallas
to the extent they conflict with our Court’s approach.  See
Simien, 321 S.W.3d at 245.[3]  Simien
involved an attempt to collect on unpaid credit card debt by Unifund, assignee of
the original credit card issuer, Citibank. 
Id.  at 239. 
The defendant in that case did not dispute the authenticity or
enforceability of the credit card agreement; nor did she dispute that she had
breached the credit card agreement.  Id.  Rather, she contested the amount owed and the
appropriate interest rate.  Id. 


Over the
defendant’s objection, the trial court admitted a business record affidavit,
signed by one of Unifund’s employees, attaching, among other things 
(1) a Unifund credit card statement, (2) the assignment from Citibank to
Unifund, (3) three Citibank statements, and (4) the Citibank Card
Agreement.  Id.  We analyzed whether the
trial court’s admission of these documents was within its discretion with
reference to the test this Court had articulated earlier in Bell v. State, which held an assignee
could introduce documents authored or created by a predecessor company if “(a) the document is incorporated and
kept in the course of the testifying witness’s business; (b) that business
typically relies upon the accuracy of the contents of the document; and (c) the
circumstances otherwise indicate the trustworthiness of the document.”  Id.
at 240–41
(citing Bell, 176 S.W.3d at 92.).   

In Simien, we concluded that the trial court
acted within its discretion admitting the business records affidavit.  Id.
at 245.  The affidavit in Simien stated:

The affiant is the
designated agent of Unifund [and] is authorized to make this affidavit on
Plaintiff’s behalf. 

. . . . 

The affiant is the
designated agent of Unifund CCR partners (Plaintiff) in the above entitled and
numbered cause, and that in such capacity is authorized to make this affidavit
on Plaintiff's behalf.

That the affiant has
reviewed the file in this matter and upon review of the file has personal
knowledge of the facts set forth in this affidavit and is not disqualified from
making this affidavit or giving testimony herein.

That affiant is a designated
agent and has personal knowledge of the books and records of the Plaintiff
concerning this claim against Defendant, MICHELLE D. SIMIEN.

The attached documents are
kept by Plaintiff in the regular course of its business as permanent records of
the company and it was the regular course of business for an employee with
personal knowledge of the act, event, or condition recorded to make the
memorandum or record, or to transmit the information thereof to be completed in
such attached memorandum or record; and memorandum or record was made at or
near the time of the act, event, or condition recorded or indicated in said
record, or reasonably soon thereafter.

The Defendant entered into
an agreement allowing Defendant to receive cash advances and/or purchase goods
and services at different places which honored the credit cards as issued.

That the attached account
[identified by number] is the original, true and correct account or an exact
duplicate thereof of Defendant, MICHELLE D. SIMIEN, which has been maintained
in files under my supervision and control.

Id. at 241.  Applying the first Bell factor, we concluded this affidavit
established that Unifund “integrated” Citibank’s records into its own records based
on the statements that (1) the records were “kept by [Unifund] in the regular
course of its business as permanent records of the company,” (2) the records
were “maintained in files under [the affiant’s] supervision and control,” and
(3) the affiant “reviewed the file, is the designated agent for the file, and .
. . has personal knowledge of the books and records concerning Simien.”  Id.
at 242.  

Noting that
the second Bell factor—“reliance on accuracy of documents”—can be “shown in a number of different ways,”
we found Unifund satisfied this requirement with the affidavit’s averments that
the affiant reviewed the file, is the designated agent for the file, has
personal knowledge of the books and records of Simien concerning this claim,
has maintained the files under his control, and that Simien’s account remains
unpaid in the amount stated in the affidavit. Id. at 242–43.    

Finally, we
concluded, in accordance with the third Bell
factor, that “the circumstances indicate[d] the trustworthiness of the
third-party document[s].”  Id. at 243.  We noted, “Citibank must keep careful records
of its customer’s credit card debt, otherwise its ‘business would greatly
suffer or even fail.’”  Id. at 244 (quoting Harris v. State, 846 S.W.2d 960, 963 (Tex. App.—Houston [1st Dist.]
1993, pet. ref’d)).  We further pointed
to Citibank’s incentive to keep trustworthy records, as “failure to keep
accurate records could result in criminal or civil penalties.” Id. at 244.  Identifying the “primary concern in admitting
records such as these [to be] their reliability,” we considered it significant
that the defendant did “not attack the reliability of the records.”  Id.
at 245.

We are
faced with a different posture in this case than Simien, a case in which the issue was whether the trial court
abused its discretion in admitting certain business records.  The issue here is whether the trial court
abused its discretion by excluding two exhibits—the Agreement and a credit application—proffered under the business records exception to the hearsay rule.  We conclude, given the totality of the unique
circumstances the trial court was presented with, Old Republic has not
established that the trial court abused its considerable discretion in excluding
these documents.    

A trial
court abuses its discretion when it acts unreasonably or arbitrarily, or
without reference to any guiding principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Waldrep v. Tex. Emp’rs Ins. Ass’n, 21
S.W.3d 692, 703 (Tex. App.—Austin 2000, pet. denied). “We will not reverse a
ruling on the exclusion of evidence simply because we disagree with the
decision.” Codner v. Arellano, 40
S.W.3d 666, 674 (Tex. App.—Austin 2001, no pet.) (citing Buller, 806
S.W.2d at 226).  Rather we will only
reverse if the court acts without any guiding principles and there is no
legitimate basis for the ruling. Malone,
972 S.W.2d at 43.

Unel testified
that (1) he is an assistant vice-president for loss mitigation and field
underwriting for Old Republic Insured Credit Services, a related entity to Old
Republic, (2) Old Republic insures loans for financial institutions such as
First Mutual’s loan to Edwards, (3) Old Republic received First Mutual’s
original documents and ownership of those documents from First Mutual when Old
Republic paid First Mutual’s claim on Edwards’s default, (4) Marlana Edwards’s
signature is on the Agreement, (5) Old Republic has been in possession of the
documents since assigned by First Mutual, (6) Old Republic’s practice is to keep
records from the time of assignment, (7) Unel reviewed the file and the
records, (8) Old Republic also received the credit application from First
Mutual and kept in the normal course of business, and (9) Marlana Edwards’s
name is on the credit application.  

Unel further testified to Old Republic’s practice of
accepting and keeping account documents after paying claims on those
accounts.  He also testified that Old
Republic paid First Mutual’s claim in exchange for the documents.  Cockrell,
817 S.W.2d at 113 (verification of accuracy of information for purposes of
demonstrating assignees reliance demonstrated by evidence that records were
kept in the ordinary course of assignee’s business as mortgage insurer and
formed basis of payment on claim).

Unel is not
the custodian of these records.  He works
for a different company (related through a mutual parent company) and he did
not testify to having personal knowledge of the way Old Republic uses and
maintains its records.    Nonetheless, that personal knowledge is
arguably implicit in the testimony that it is the regular practice of Old
Republic to keep assigned files from the time of assignment.  Tex.
R. Evid. 803(6) (business records can be proven up by “custodian or other qualified witness” (emphasis
added)); Cf. Cockrell v. Republic Mortg. Ins. Co., 817 S.W.2d 106, 111 (Tex.
App.—Dallas 1991, no pet.) (“An affiant’s position may show how the affiant
learned or knew of the facts to which they testify.”).  Given this, the first two Bell factors—(1) incorporated and kept in the course
of business and (2) reliance on accuracy of documents—were satisfied by Unel’s testimony.  

The trial
court here could have, however, determined that Old Republic did not establish
that the circumstances indicated the trustworthiness of the documents as
required by the third Bell factor.  In its brief, Old Republic argues that—based on our analysis in Simien and the Dallas Court of Appeals’ analysis in Cockrell—trustworthiness here was established by (1) testimony that the records
were kept in the course of Old Republic’s business and formed the basis of its
insurance claim payment to First Mutual, and (2) that Old Republic’s business
could suffer monetarily and face civil and criminal liability if it did not
verify the accuracy of claims.[4]

Simien did hold the evidence similar to
that cited by Old Republic here to be some evidence to support the
trustworthiness of the documents in those cases.  But the question here is whether that
evidence conclusively establishes trustworthiness in the face of other
indicators casting doubt on the trustworthiness of the documents.  We hold that it does not.  

In Simien, we admonished that the “primary
concern in admitting records such as these is their reliability.”  321 S.W.3d at 245; see also Curran v. Unis, 711 S.W.2d 290, 295 (Tex. App.—Dallas
1986, no pet.) (“[T]he primary emphasis of rule 803(6) is on the reliability
and trustworthiness of the records sought to be introduced.”).  In finding evidence similar to that cited by
Old Republic to be some evidence of circumstances indicating trustworthiness of
the documents at issue in that case, we expressly noted that Simien did not
attack the reliability of the records.  Simien, 321 S.W.3d at 245.  Likewise, in Cockrell, the other case upon which Old Republic relies, we pointed
out that the defendant did not “effectively allege any evidence or affirmative
defenses to defeat” the plaintiffs’ right to payment and we noted that
“[n]othing in the record or the circumstances concerning the generation of
these records indicates a lack of trustworthiness.”  817 S.W.2d at 113.  

The
transaction and situation here is fundamentally different than presented in Simien and Cockrell.  In Simien and Cockrell, the plaintiffs had assumed ownership of contracts that
prior account-makers had entered into with the defendant.  Simien
involved a credit card debt that Simien never disputed that she entered or
breached.  There was no allegation or
evidence that the original contract or payment information was incorrect—leaving the relevant issue as the assignee’s
practices and recordkeeping.  The same is
true of Cockrell, a case in which the
defendant did not present any allegations or evidence that the underlying documents
were not valid or binding or that the payment records were incorrect—again leaving the relevant issue as the
assignee’s practices and recordkeeping.  


Here, unlike
the situation in Simien and Cockrell, the documents Old Republic
sought to introduce were not the product of a loan that Edwards allegedly
entered into with Old Republic’s predecessor. 
Instead, the documents were allegedly generated in connection with a
real estate improvement contract between Edwards and Nationwide Building
Systems, another nonparty.  Nationwide
assigned that contract to First Mutual, who in turn assigned it to Old Republic.  

Edwards
filed a verified denial claiming that the signature on the Agreement was not
hers, and that the agreement with Nationwide forming the basis of Old
Republic’s suit was “not as alleged.”  In
other words, unlike the defendants in Simien
and Cockrell, Edwards had—in a sworn statement—directly challenged the original making of the
business record at issue.   

As for the
credit application, Edwards’s attorney pointed out to the court at trial that it
was not produced to Edwards during discovery and that it recites that it is for
different work than was alleged to have been completed in the Agreement.  Old Republic’s attorney did not dispute either
of these assertions.  Old Republic has
not demonstrated that the trial court abused its discretion by refusing to
admit the Agreement and credit application into evidence.[5]  Tex R.
Civ. P. 803 (heresay objection to business records overcome by testimony
complying with rule “unless the source of information or the method or
circumstances of preparation indicate lack of trustworthiness”); cf. In re A.T., No. 2-04-355-CV, 2006 WL
563565, at *4 (Tex. App.—Fort Worth March 9, 2006, pet. denied) (despite
substantial compliance with business record affidavit form in rule 902(10)(b),
examination of actual attached records of drug testing reflected they offered
too little detail to be deemed trustworthy under Rule 803(6), and trial court
abused its discretion in admitting into evidence).  

We overrule
Old Republic’s first issue.

Denial
of Motion for Summary Judgment

In Old
Republic’s second issue, it argues that the “trial court erred in denying Old
Republic’s motion for summary judgment when Old Republic established its right
to judgment as a matter of law.”  “Where
a motion for summary judgment is denied by the trial judge, and the case is
tried on the merits, the order denying the motion for summary judgment is not
reviewable on appeal.” Orozco v. Orozco,
917 S.W.2d 71, 72 (Tex. App.—San Antonio 1996, writ denied) (citing Ackermann v. Vordenbaum, 403 S.W.2d 362,
365 (Tex. 1966)).  The denial of Old
Republic’s motion for summary judgment prior to the underlying trial on the
merits presents nothing for our review. 
We accordingly overrule Old Republic’s second issue.  

Subpoena

In Old
Republic’s third issue, it argues that “the trial court erred in finding that
the subpoena directed to Edwards through her attorney of record was
insufficient when Edwards had notice of the subpoena.”  Specifically, Old Republic contends that
Edwards or her attorney had at least constructive notice of the subpoena.  It contends Edwards’s failure to attend trial
caused it “harm” and that the “trial court’s exclusion of Old Republic’s
business records and failure to compel the attendance of Edwards resulted in a
death penalty sanction to Old Republic as no evidence could be offered.”  Accordingly, Old Republic argues, “the trial
court’s actions were . . . an abuse of discretion, and its judgment should be
reversed.”  

A.   Applicable law  

A party may
be compelled to attend trial through a subpoena.  Tex.
R. Civ. P. 176.2, 181.  The Texas
Rules of Civil Procedure prescribe both the method of service and how service
in proven: 

176.5. Service 

(a)     Manner of Service. A
subpoena may be served at any place within the State of Texas by any sheriff or
constable of the State of Texas, or any person who is not a party and is 18
years of age or older. A subpoena must be served by delivering a copy to the
witness and tendering to that person any fees required by law. If the witness
is a party and is represented by an attorney of record in the proceeding, the
subpoena may be served on the witness's attorney of record.

(b)     Proof of Service. Proof
of service must be made by filing either:

(1) the witness’s signed
written memorandum attached to the subpoena showing that the witness accepted
the subpoena; or

(2) a statement by the
person who made the service stating the date, time, and manner of service, and
the name of the person served.

Tex. R. Civ. P.
176.5.  Methods of enforcing subpoenas are
also specifically prescribed by the rules:

176.8.  Enforcement of
Subpoena

 (a)    Contempt. Failure by any person without
adequate excuse to obey a subpoena served upon that person may be deemed a
contempt of the court from which the subpoena is issued or a district court in
the county in which the subpoena is served, and may be punished by fine or
confinement, or both.

(b)     Proof of Payment of Fees
Required for Fine or Attachment. A fine may not be imposed, nor a person
served with a subpoena attached, for failure to comply with a subpoena without
proof by affidavit of the party requesting the subpoena or the party’s attorney
of record that all fees due the witness by law were paid or tendered.

Tex.
R. Civ. P. 176.8.

B.  
Discussion    

The record
reflects that four days before trial, on a Friday afternoon, Old Republic
attempted to serve Edwards through her attorney’s office.  Edwards’s attorney was not there to accept
the subpoena, but the affidavit attached to Old Republic’s motion for new trial
indicates that it was received by someone in his office.  Edwards’s counsel stated at trial that to
“his knowledge, there was no check submitted.” 
Old Republic’s counsel stated that (1) he did not know the name of the
person who signed for the subpoena, (2) “there was a check submitted,” and (3)
“as far as the signed affidavit from the process server, I do not have that.”  The court’s conclusion at that point that
“you can’t prove that she was subpoenaed” was correct and in accordance with
the plain language of Rule 176.5(b). 

Although
Old Republic complains generally that the court abused its discretion, it did
not actually request any particular relief from the trial court related to the subpoena
until its motion for new trial.  At
trial, it did not ask for enforcement of the subpoena, nor did it request a
continuation of the trial to secure Edwards’s appearance.  In its motion for new trial, it did for the
first time attach “a statement by the person who made the service stating the
date, time, and manner of service, and the name of the person served” in
compliance with Rule 176(b)(2), but never filed, even with its motion for new
trial, “proof by affidavit of the party requesting the subpoena or the party’s
attorney of record that all fees due the witness by law were paid or tendered”—a prerequisite to a request for enforcement of
a subpoena under Rule 176.8(b).  Old
Republic has not demonstrated any abuse of discretion related to the trial
court’s determination that it failed to establish that Edwards was properly
subpoenaed. 

Motion for
New Trial             

In its
fourth issue, Old Republic argues that the trial court abused its discretion by
failing to grant its motion for new trial, which argued the court “committed
reversible error by failing to admit Old Republic’s business records pertaining
to Edwards into evidence.”  Old
Republic’s argument has been fully addressed with our discussion and
disposition of Old Republic’s first issue. 
For the same reasons, we overrule Old Republic’s fourth issue.  

Conclusion

We affirm the trial court’s
judgment.  

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Sharp and Brown.

Justice Brown, concurring.

Justice Sharp, concurring
without opinion.           

 

 











[1]
          This reference to a check refers
to the fees that must accompany a subpoena. This is significant because the
Texas Rules of Civil Procedure provide that enforcement of a subpoena cannot be
sought absent “proof by affidavit that . . . all fees due the witness by law
were paid or tendered.” Tex. R. Civ. P.
176.8.  





[2]           A new Simien opinion was later issued. 
See Simien v. Unifund CCR Partners,
321 S.W.3d 235 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (op. on
reh’g).   





[3]           Old Republic does not challenge the
test set forth in Simien; its
argument is that it satisfied the requirements established in that case.    





[4]
          E.g., Simien, 321 S.W.3d
at 244 (recognizing “Citibank must keep careful records of its customer’s
credit card debt, otherwise its ‘business would greatly suffer or even fail’”
(quoting Harris v. State, 846 S.W.2d
960, 963 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d)).





[5]
          We note that admissibility is
rarely an issue in debt-collection cases such as this because usually the
documents to be admitted fall within the rules providing for
self-authentication of documents and for the admission of business
records.  See e.g., Tex. R. Evid. 803(6) (business records
exception to hearsay rule), 902(8) (notarized documents are
self-authenticating); 902(10) (business records accompanied by affidavit and
properly filed are self-authenticating and excepted from the hearsay rule); Tex. R. Civ. P. 93(7) (unless contract
execution is challenged by verified denial, it is “received in evidence as
fully proved”).